**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

| | |
|---|---|
| MARGARET E. FLETCHER, | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
|  vs. | ) CASE NO.   2:18-CV-60 |
| | ) |
| UNIVERSAL PROTECTION | ) |
| SERVICE, LLC a/k/a ALLIED | ) |
| UNIVERSAL SECURITY SERVICES, | ) |
| LLC, | ) |
| | ) |
|     Defendant | ) |

***PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND***
***REQUEST FOR TRIAL BY JURY***

*I.  INTRODUCTION*

Plaintiff Margaret E. Fletcher ("Fletcher") brings this action against Defendant Universal

Protection Service, LLC a/k/a Allied Universal Security Services, LLC ("Universal") for

violations of the overtime provisions of the Fair Labor Standards Act, for violations of the

Indiana Wage Claims Statute, and for violations of the anti-retaliation provision of the Fair Labor

Standards Act ("FLSA"), see USC § 215(a)(3).

*II.  FACTUAL ALLEGATIONS*

1.      Fletcher is a resident of Terre Haute, Vigo County, Indiana.

2.      Universal is a security company.  Universal is believed to be headquartered at 161

Washington Street, Suite 600, Eight Tower Bridge, Conshohocken, Pennsylvania 19428.

Universal employed Fletcher and other employees at one or more location in Vigo County,

Indiana.

3.      Fletcher worked for Universal as a security guard at the Wabash Valley Power

Plant in Vigo County, Indiana.  Fletcher worked for Universal (and its predecessor companies) at the Vigo County location from approximately July 2006 until the date of her wrongful termination on December 15, 2017.

4.     In 2017, Universal paid Fletcher for her work at the rate of Nine Dollars ($9.00) per hour.  Generally, Universal scheduled Fletcher to work four days per week, Monday through Thursday, for shifts scheduled to last at least twelve hours.  Generally, Universal scheduled Fletcher to work a shift in which has official times of 6:00 a.m. to 6:00 p.m.  Universal regularly scheduled Fletcher to work eight or more overtime hours each week.

5.     Universal did not use any type of time clock or accurate system that recorded Fletcher's actual hours worked.  Instead, each work day, Universal required Fletcher to sign a pre-printed form or sheet that stated that Fletcher worked that day from 6:00 a.m. to 6:00 p.m. This form was significantly inaccurate, as Fletcher was performing actual work of thirty minutes or more per work day for which she was not being paid wages or overtime.  Fletcher began to suffer significant wage losses after Linda Campbell became her supervisor.  Ms. Campbell was Fletcher's direct supervisor for approximately the last two years of Fletcher's employment with Universal.  These wage and overtime violations occurred as follows:

a.     Universal's official company policy required Fletcher (and her fellow security guards) to be physically present at their assigned gate or post by an officially-scheduled start time.  To be at her assigned gate or post by 6:00 a.m., however, required Fletcher to begin work each shift by 5:45 a.m. (at least fifteen (15) minutes prior to her officially-scheduled start time of 6:00 a.m.).  Fletcher was obligated to actually report for work and begin work at the Main Gate of the power plant by 5:45 a.m.

b.     At the Main Gate, Fletcher would begin her work activities by 5:45 a.m.  Those initial work activities included required reading and signing of all company memoranda and "pass downs" (reports on activities from earlier shifts).  Fletcher would have to read and sign any company policy statements and would have to sign in for her shift.  Fletcher would then have to obtain her work keys, her security radio and her schedule.  At that point, Fletcher would have to get back in her vehicle and drive to her assigned gate or post (the South Gate or the North Gate).  Both the North and South Gates were long, slow drives from the Main Gate and took significant time.

c.     Universal required Fletcher to be at her assigned gate or post and working (providing security services) by no later than 6:00 a.m.

d.     Despite her earlier, required work activity, Universal would not pay Fletcher for any work before 6:00 a.m.

e.     Fletcher would work her entire twelve hour shift after reporting to her gate or post (the South Gate or the North Gate).  When Fletcher worked at the South Gate, she would continue working at her post until 6:00 p.m. or later when a  new security guard would report to work at that South Gate to relieve Fletcher.  When Fletcher worked at the North Gate, she would work until 6:00 p.m. or later and would then have to lock up and secure the North Gate guard house.

f.     Universal would stop paying Fletcher for her work each shift at 6:00 p.m. despite the fact that Fletcher was required to perform significant additional work before she could leave work at the power plant site for the day.

g.     Fletcher was required to drive from her assigned gate or post (the South Gate or

North Gate) to the Main Gate.  At the Main Gate, Fletcher was required to review company memoranda again, return her work keys and her security radio.  At that point, generally 6:15 p.m., Fletcher would be able to end her work day and leave the power plant.

6.     Based upon work requirements placed upon her, as described above, Fletcher was not paid for two or more hours of overtime wages each week (or virtually every work week). Universal's failure and refusal to pay Fletcher for all of her time worked, as described above, has continued for a number of years, but has certainly occurred routinely - meaning every week Fletcher worked - during the entire time Fletcher was supervised by Linda Campbell.

7.     Additionally, on at least one occasion each year over the last three years, Universal required Fletcher to spend work time outside her normally scheduled working hours to travel to a medical facility near the Honey Creek Mall in Terre Haute, Indiana and submit to drug screening.  Each such visit would take one to two hours and Universal did not pay Fletcher for this work activity it required her to undertake.  This caused Fletcher to lose additional earned wages and overtime during these weeks.  Additionally, because she was not paid at all for this travel and testing time, Fletcher was not paid a minimum wage for these work hours by Universal.

8.     During the last two years, Fletcher made specific complaints to her supervisor, Linda Campbell, about the fact that Universal was not paying her for all of her work time each shift, particularly the time before 6:00 a.m. that she had to work at the Main Gate and drive to her assigned gate or post to be in place at 6:00 a.m. and the work time Fletcher spent after 6:00 p.m. leaving her post, driving to the Main Gate and completing her work for the day at the Main Gate. Ms. Campbell did not take any action to correct the wage and overtime violations committed by

Universal against Fletcher, but Ms. Campbell did become increasingly angry that Fletcher was making these wage complaints.

9.      Throughout her more than eleven years of service to Universal, Fletcher did good work and met all of Universal's reasonable expectations of her.  Her employment was not in any jeopardy based upon her work performance or compliance with Universal's work rules.

10.     Universal terminated Fletcher's employment on December 15, 2017.  On that date, Fletcher was scheduled to begin work and report at 6:00 a.m.  Fletcher reported to work by no later than 5:59 a.m., but she reported to work and began her work day at the Main Gate of power plant at 5:59 a.m.  On that date, Fletcher was met at the Main Gate by her immediate supervisor, Linda Campbell.  Ms. Campbell was on the telephone with the Regional Supervisor, Mr. Jason Hiatt, and claimed to Mr. Hiatt that Fletcher was late for work by reporting and beginning work at 5:59 a.m., even though Fletcher was scheduled to begin work at 6:00 a.m. and Universal had a long history of refusing to pay Fletcher for her work performed before 6:00 a.m. Additionally, it is important to note that Ms. Campbell is the supervisor to whom Fletcher had been complaining regarding Universal's refusal to pay her for all of her work time, particularly work time prior to 6:00 a.m. and work time after 6:00 p.m.  Ms. Campbell claimed Fletcher was "late" for work by beginning her work at 5:59 a.m. because Fletcher would not have time to perform all of her work activities at the Main Gate and to travel and be in place at the South Gate by precisely 6:00 a.m.  At a certain point, Ms. Campbell actually put Mr. Hiatt on speakerphone so that Fletcher could hear Mr. Hiatt.  Mr. Hiatt demanded that Fletcher tell Ms. Campbell and him if Fletcher could get to the South Gate in 30 seconds (by 6:00 a.m.) because it was already 5:59 a.m.  Fletcher answered "no," as she could not travel from the Main Gate to the South Gate in such a short amount of time.  Mr. Hiatt told Fletcher that she was to go home and not work

that day.  Mr. Hiatt then told Fletcher that it was company policy that an employee be at her post at the beginning of her shift.

11.  Fletcher left work and went home.  She did not work any longer on December 15, 2017.

12.  Later in that same December 15, 2017 date, Jason Hiatt telephoned Fletcher at home and told her that he was firing her.  Mr. Hiatt told Fletcher that she was fired because she challenged a company policy and "created a hostile work environment" by challenging this policy.  The only complaint Fletcher made to her Universal supervisors was her complaint that she was not paid all earned wages and overtime for all work hours she had performed for Universal.

13.  Fletcher certainly believes that she was terminated solely for engaging in activity and speech protected by the Fair Labor Standards Act ("FLSA").  As further proof, in addition to the fact that Fletcher was not late for work on December 15, 2017 and Universal cannot claim it terminated Fletcher for any late arrival, Fletcher can highlight the favorable treatment of a fellow security guard.  On the day before Fletcher's termination, a fellow security guard named Lynn Hollingsworth arrived at the Main Gate at least fifteen (15) minutes late and beyond her scheduled shift time.  Ms. Hollingsworth had the same supervisors (chain of command) - Ms. Campbell and Mr. Hiatt, Ms. Hollingsworth was not fired and was not disciplined in any way for actually arriving late to work.  The only difference between Fletcher and Ms. Hollingsworth is the fact that Fletcher had made multiple reports and complaints to her supervisors that she was not being paid wages and overtime she was owed based upon her actual hours of work each shift and each week.

14.  Fletcher was an hourly-paid, non-exempt employee of Universal.  Universal's

failure to pay Fletcher for all of her actual and known hours worked constitutes a violation of Fletcher's rights under the Indiana Wage Claims Statute, I.C. 22-2-9.  In the same manner, Universal's failure to pay Fletcher for all of her overtime hours (hours worked in excess of 40 during a single work week) worked in every or virtually every work week constitutes a plain violation of Fletcher's right to overtime compensation under the FLSA, 29 USC § 207.

15.     Fletcher is owed significant unpaid wages and unpaid overtime compensation for time she was employed by Universal which falls within the applicable statutes of limitation under the FLSA and the Indiana Wage Claims Statute.

16.     Fletcher is sustaining even greater financial losses stemming from Universal's illegal and retaliatory termination of her employment, which Fletcher's Universal supervisor told her was directly caused by her complaints about Universal's illegal wage practices.  Fletcher has suffered significant lost wages and benefits.

17.     It is clear from Universal's action and comments made by its supervisors that Universal did not know that it is unlawful and an unfair labor practice for an employer to have any rule which prohibits or interferes with its employees' right to discuss wages and other terms and conditions of employment with coworkers or supervisors.  See *Flex Frac Logistics, L.L.C. v. N.L.R.B.*, 746 F.3d 205, 208–09 (5th Cir. 2014); 29 USC § 158(a)(1).

18.     The only thing Fletcher did or the her Universal supervisors claim she did that led to her termination was complain to her supervisors that she was not being properly paid her wages.  Universal had and offers no other reason for its termination of Fletcher's employment.  Fletcher was plainly terminated in retaliation for activity protected by the FLSA.  Fletcher had and has a legal right to discuss and to complain about any type of violation of her right to be paid her wages and her overtime under the FLSA.  Her termination is a violation of the anti-retaliation

provision of the Fair Labor Standards Act, see 29 USC § 215(a)(3).

19.     Fletcher is seeking all available damages, including all lost wages and benefits, all compensatory damages, all unpaid overtime compensation, all unpaid wages, all liquidated damages and all punitive damages.  Fletcher is seeking payment of all of her reasonable attorney's fees, costs and expenses.  Universal has intentionally, knowingly and willfully violated Fletcher's rights to be paid her wages and overtime compensation in full.  Fletcher is expressly alleging that Universal has not acted in good faith and has, in fact, acted in bad faith in its time keeping policies and practices and its failure to pay Fletcher for all of her wages.

### III.  JURISDICTION AND VENUE

20.     This Court has jurisdiction over Fletcher's claims under 28 USC § 1331 as her FLSA overtime and retaliation claims raise questions of federal law.  This Court has pendent jurisdiction over Fletcher's Indiana law claim which arises from a common set of facts.

21.     This Court is the appropriate venue for this cause of action as Fletcher resides and worked for Universal in Vigo County, Indiana.

### IV.  ADMINISTRATIVE PROCEDURES

22.     Fletcher has complied with all of the administrative procedures that are conditions precedent to the filing of this lawsuit.  Fletcher was involuntarily terminated from employment by Universal.  As such, Fletcher's wage claims to recover her unpaid and underpaid wages arise under the Indiana Wage Claims Statute, I.C. 22-2-9.  Fletcher obtained a letter from the Indiana Attorney General's Office dated January 26, 2018, which permits her attorney to file this wage claim on Fletcher's behalf as the Indiana Attorney General's "designee."

### V.  STATEMENT OF CLAIMS

#### A.  Overtime Claims Under the Fair Labor Standards Act

23.     Fletcher incorporates herein by reference paragraphs 1 through 22 above.

24.     Defendant Universal is an "enterprise," as that term is defined by the FLSA, covered by the overtime and minimum wage provisions of the FLSA.  Universal is an "employer," as that term is defined by the FLSA.  Finally, Universal is a "person" as that term is defined by the FLSA.

25.     As described above, Universal has violated Fletcher's rights to be properly paid overtime wages in a manner required by the FLSA.

26.     Universal's failure to comply with the FLSA's provisions regarding overtime compensation is willful and without justification and warrants the application of the FLSA's three (3) year statute of limitations.

27.     Fletcher seeks all available damages, including unpaid wages, unpaid overtime compensation, liquidated damages, payment of reasonable attorney's fees, costs and expenses, and any and all other damages to which she may be entitled for Universal's violations of the Fair Labor Standards Act.

### B.  Retaliation Claims Under the Fair Labor Standards Act

28.     Fletcher alleges and incorporates herein by reference paragraphs 1 - 27 above.

29.     As described above, Universal knowingly, willfully and intentionally took retaliatory action against Fletcher based upon her protected activity under the FLSA.  Universal violated the anti-retaliation provisions of the FLSA, see 29 USC § 215(a)(3), when it retaliated and terminated Fletcher for complaining about his wages and about violations of her rights protected by the FLSA.  But for Fletcher's protected activities under the FLSA, Universal would not have terminated Fletcher's employment.

30.     As a result of Universal's retaliatory and materially adverse actions taken against

her, Fletcher is seeking all available compensatory, equitable and punitive damages against

Universal.  Additionally, Fletcher seeks payment of all of her reasonable attorney's fees, costs

and expenses.

### C.  Indiana Wage Claims Statute Claim

31.     Fletcher incorporates herein by reference paragraphs 1 through 30 above.

32.     Universal's failure to pay Fletcher her full wages 1) on time and 2) in full were

acts of bad faith.  Fletcher is certainly entitled to payment of all of her earned wages, liquidated

damages for the late paid wages, and liquidated damages for the unpaid wages.  Fletcher's right

to damages arises under I.C. 22-2-9-4(b), which incorporates the damages provisions of I.C. 22-

2-5-2.

33.     By way of this Complaint, Fletcher is seeking all available damages, including all

unpaid wages caused by Universal's failure to pay Fletcher for all work she performed, an

additional amount equal to two (2) times her unpaid wages, plus any and all attorney's fees,

costs, and expenses, and any other damage which she may be entitled pursuant to Indiana Law.

### VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Margaret E. Fletcher respectfully requests that the Court enter

judgment in her favor against Defendant Universal Protection Service, LLC a/k/a Allied

Universal Security Services, LLC , and award to Fletcher all available damages and equitable

relief, including, but not limited to, all back pay and benefits, all front pay and benefits,

compensatory damages, unpaid or underpaid wages and benefits, unpaid overtime compensation,

liquidated damages, punitive damages, and payment of all her reasonable attorney fees, costs and

expenses, along with any other damages or relief necessary to remedy Universal's violations of

the FLSA and the Indiana Wage Claims Statute, together with any available pre-judgment

interest, and any other relief which would be just and proper in the premises.

HUNT, HASSLER, KONDRAS & MILLER LLP
100 Cherry Street
Terre Haute, Indiana 47807
(812) 232-9691


By /s/Robert P. Kondras, Jr._____
   Robert P. Kondras, Jr.
   Attorney No. 18038-84
   kondras@huntlawfirm.net


### REQUEST FOR TRIAL BY JURY

Comes now Plaintiff Margaret E. Fletcher, by her counsel, and hereby requests a trial by

jury, on all issues which may be tried to a jury.

HUNT, HASSLER, KONDRAS & MILLER LLP
100 Cherry Street
Terre Haute, Indiana 47807
(812) 232-9691


By /s/Robert P. Kondras, Jr._____
   Robert P. Kondras, Jr.
   Attorney No. 18038-84
   kondras@huntlawfirm.net